### EDISON MFG. CO. v. BANKS ELECTRIC & MFG. CO.

(District Court, S. D. New York. June 20, 1912.)

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—BATTERY.

    The Dodge patent, No. 894,487, for a voltaic or primary battery, was not anticipated, and discloses patentable invention, in that it is stronger and cheaper, and can be more readily renewed, than those in prior use; also *held* infringed.

In Equity. Suit by the Edison Manufacturing Company against the Banks Electric & Manufacturing Company. On final hearing. Decree for complainant.

Louis Hicks (Delos Holden and Frederick Bachmann, of counsel), for complainant.

A. G. N. Vermilya, for defendant.

HOLT, District Judge. This is a suit in equity to restrain the infringement of a United States patent, No. 894,487, issued to Eben G. Dodge for improvements in a voltaic or primary battery. The invention, although relating to an electrical apparatus, is mechanical, rather than electrical. The object of the invention, as stated in the patent, is to simplify and cheapen the construction of primary batteries of the class in which the negative electrode consists of a plate of oxide of copper or other depolarizing agent properly molded and agglomerated, and the positive electrode of a plate or plates of zinc, so that renewals of the same would be less expensive and more readily carried out.

By the invention both the electrodes are supported by one frame or hanger, secured to the battery cover with one clamp. By such a

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

construction the entire essential parts of the battery can be manufactured and put together in the factory, and, when the electrodes become exhausted, a renewal can be made by simply loosening the clamp, throwing away the old hanger, with its attendant electrodes, and substituting a new set in its place by clamping the new hanger to the cover of the battery jar. The renewal can be effected almost as readily as a new incandescent light bulb can be inserted in the place of one that is worn out. The result is a combination of the essential parts of the battery in one simple and rigid structure, which can be manufactured cheaply, can be easily renewed, and the use of which, when a renewal is necessary, largely avoids the danger of contact with the caustic soda solution in the jar in which the electrodes are plunged. The complainant's form of battery has gone into very extensive use, particularly for railway signals. The facts that the parts are completely assembled at the factory, that the structure is strong and cheap, and that a new battery can be so easily substituted for a wornout battery, have caused batteries of this class to be largely adopted by leading railroads.

I am satisfied from the evidence that this invention was novel, and was not anticipated by any of the patents or publications in the prior art. There is nothing electrically new in the arrangement of the parts; but this mechanical arrangement is novel. I have no doubt that the batteries made and sold by the defendant infringe. There is no difference between them and the complainant's battery, except that the defendant's depolarizing plate, instead of being a solid plate of oxide of copper, surrounded by a frame, consists of a considerable number of such plates inserted in a frame. The comparison made by the complainant's expert of the two plates to two window frames, one of which contains a single piece of glass and the other a number of pieces of glass, seems to me a good illustration of the essential similarity between the two plates. The evidence shows that they act in a precisely similar manner.

The complainant is entitled to a decree as demanded in the bill.